IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2006

## STATE OF TENNESSEE v. CHAD MICHAEL KNIGHT

**Appeal from the Circuit Court for Montgomery County**
**No. 40100367     Michael R. Jones, Judge**

### No. M2005-00779-CCA-R3-CD - Filed May 31, 2006

The Appellant, Chad Michael Knight, appeals the sentencing decision of the Montgomery County Circuit Court. Following a jury trial, Knight was convicted of reckless endangerment, a Class A misdemeanor, and aggravated child abuse, a Class A felony, and sentenced to an effective term of twenty years, eleven months, and twenty-nine days in confinement. On appeal, Knight argues that the trial court erred in: (1) failing to apply various sentencing considerations which would have served to mitigate his sentence, as authorized by Tennessee Code Annotated section 40-35-113(13) (2003); and (2) refusing to sentence him as an especially mitigated offender in accordance with Tennessee Code Annotated section 40-35-109 (2003). After review of the record, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Roger E. Nell, District Public Defender; and Russell Church, Assistant Public Defender, Clarksville, Tennessee, for the Appellant, Chad Michael Knight.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Daniel Brollier, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

At approximately 6:07 p.m. on May 17, 2001, Officer Jimmy Dill of the Clarksville Police Department was dispatched to the Appellant's home at 1845 Parkway Place, Apartment D, in Clarksville, in response to a call that the Appellant's eleven-week-old son, Dylan Knight, was not breathing. At that time, the Appellant was serving as a chemical operations specialist in the U.S. Army and was assigned to the military post at Ft. Campbell. He, his wife, and child resided in

Clarksville. On this particular day, the Appellant left the base, returned home, and drove his wife, Brooke, to her job at Ryan's Steak House, with their sleeping son secured in a car seat. After arriving home, the Appellant fed the baby and laid him in his crib. He stated that ten minutes later he discovered that the victim was not breathing and started CPR immediately and called 911.

Officer Dill found the victim on the couch, could not find a pulse, and began to administer CPR. The EMS arrived shortly thereafter and initiated advanced life support procedures prior to transporting the victim to Blanchfield Army Community Hospital at Ft. Campbell. The victim's mother met the Appellant at Blanchfield before the victim was "life flighted" to Vanderbilt Hospital in Nashville.

At Vanderbilt, the victim exhibited injuries consistent with "Shaken Baby Syndrome." He suffered from a subdural hematoma on the surface of the brain, as well as bleeding on the right side of the brain, retinal hemorrhages, bruising on the head and back, and eleven rib fractures. The victim underwent surgery during which a section of his brain was removed and a drain was inserted. Subsequently, test results indicated that the victim was brain dead, and life support was withdrawn. An autopsy later confirmed that the victim had suffered a combination of both new and old rib fractures, in addition to new and old bleeding in the brain. The injuries were indicative of "blunt trauma" to the head and "forceful squeezing of the chest."

When questioned, the Appellant first denied any involvement in the death of his infant son. However, during later questioning by Detective Alan Charvis of the Clarksville Police Department, the Appellant admitted that on the evening of May 17, 2001, he became very upset because his son was crying and shook the eleven-week-old baby ten to fifteen times. The Appellant also made a written statement in which he admitted that after he fed the victim, the baby started to cry. The Appellant became upset and tried to comfort his son, but nothing worked. His statement includes the following:

> I started shaking him and said "Dylan, please be quiet." I said this twice while I was shaking him. I stopped and he stopped crying and it looked like he was passed out or went to sleep. I immediately knew something was wrong and what I did was wrong. . . .

> Saturday before mother's day, May 12, 2001, Brooke was at work. I was at home with Dylan. He started crying and I was walking the floor with him trying to calm him down and stop crying. I was in the bedroom and started shaking him to try to make him quit crying. I then realized that he was just a baby and I was squeezing him to [sic] hard so I quit.

On July 3, 2001, the Appellant was indicted for two counts of aggravated child abuse and one count of first degree murder. Following the conclusion of proof, the jury found the Appellant guilty of the Class A misdemeanor of reckless endangerment, a lesser offense of aggravated child abuse, one count of the Class A felony of aggravated child abuse as indicted, and one count of aggravated

child abuse, a lesser offense of first degree murder. A sentencing hearing was held on February 7, 2005, at which the trial court dismissed the second count of aggravated child abuse and sentenced the Appellant to eleven months and twenty-nine days for reckless endangerment, to be served consecutively to a twenty-year sentence, as a violent offender, for aggravated child abuse. The Appellant subsequently filed a motion for new trial and an amended motion for new trial, which were heard by the trial court on March 11, 2005. The motion for new trial was denied, and this appeal followed.

## Analysis

The Appellant contends that the trial court erred in failing to apply various mitigating considerations to his sentence as authorized by Tennessee Code Annotated section 40-35-113(13) (2003). Specifically, he contends that consideration of his adverse childhood history, his sorrow and remorse for his conduct, his acceptance of responsibility for his actions, his military service, and his lack of prior criminal history should have served to mitigate his sentence. Additionally, the Appellant argues the court erred in failing to sentence him as an especially mitigated offender because the court found no enhancement factors and erred in not applying mitigating factor (13) to his sentence. *See* T.C.A. § 40-35-109 (2003).

When an accused challenges the length, range, or manner of the service of a sentence, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The court must consider the evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, arguments of counsel, the nature and characteristics of the offense, mitigating and enhancing factors, statements made by the offender, and the potential for rehabilitation. *Ashby*, 823 S.W.2d at 168; *see also* T.C.A. § 40-35-210 (2003). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d), Sentencing Commission Comments.

The Appellant was convicted of aggravated child abuse, a Class A felony, which carries a sentencing range of fifteen to twenty-five years. T.C.A. § 40-35-112(1) (2003). The presumptive sentence for a Class A felony is the midpoint within the range unless there are enhancement or mitigating factors. T.C.A. § 40-35-210(c). The presumptive sentence is increased for applicable enhancing factors and decreased for applicable mitigating factors. *Id.* at (e).

After a thorough review of the record, we conclude that Tennessee Code Annotated section 40-35-113(13) is inappropriate to mitigate the Appellant's sentence in this case. With regard to the Appellant's argument that his "psychological and childhood history"[1] should provide mitigation of

---

[1]At the sentencing hearing, the Appellant testified that his drug-abusing mother was incapable of raising him. He lived an impoverished life and was raised by his grandmother and physically abused by his grandmother's husband. He met his father when he was fourteen years old and moved in with him when he dropped out of school, but he later obtained a GED.

his sentence, the trial court found that the Appellant "certainly did not have the benefit of loving parents; however, in this sense and this particular case I find that that has no weight whatsoever." We agree and likewise find, following *de novo* review, that the Appellant's argument of an abused and displaced childhood, based upon the facts presented, is inapplicable to mitigate the Appellant's sentence under mitigating factor (13). Moreover, we are aware of no authority which would permit mitigation of a non-capital sentence based upon the assertion of an abused or improvised childhood under the catch-all mitigating factor.

At the sentencing hearing, the Appellant made no request for the trial court to consider his remorse and acceptance of responsibility for his conduct; however, he now contends that the trial court should have considered these factors. A defendant's bare assertion of remorse or hollow apologies at the sentencing hearing do not automatically grant entitlement to mitigation in the sentencing process. Before it can apply remorse as a mitigating factor, a trial court must evaluate whether a defendant's claims of remorse are credible. *State v. Patricia Marie Jenson*, No. M2003-02848-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 21, 2005). The trial court is in the best position to determine the credibility of the Appellant, based upon the demeanor and appearance of the Appellant when testifying. This court gives deference to the trial court's findings in that regard. Review of the record reflects that the only proof of the Appellant's remorse is his self-serving statements made at the sentencing hearing. The Appellant's repeated denial of any involvement in his infant son's death, the indifference expressed during his son's brief hospitalization prior to death, and the non-expression of remorse outside the courtroom militate against application of mitigating factor (13).

This court has previously held that a defendant's prior honorable military service may be considered as a mitigating factor. *State v. Vincent Gerrard Overton*, No. 02C019510-CC00303 (Tenn. Crim. App. at Jackson, June 2, 1997), *perm. to appeal denied*, (Tenn. Mar. 16, 1998). However, this court has also held that a trial court's refusal to mitigate a defendant's sentence based on past military service was not error. *State v. Calvin Louis Hill*, No. M2004-00597-CCA-R3-CD (Tenn. Crim. App. at Nashville, Mar. 8, 2005). While we would agree that an honorable discharge from military service is commendable, that did not occur in this case. Accordingly, we conclude that the evidence does not preponderate against the trial court's refusal to mitigate the Appellant's sentence based on the Appellant's military service.

We agree with the Appellant's assertion that his presentence report indicates that he has no prior criminal record. A trial court may consider the absence of a prior criminal history under Tennessee Code Annotated section 40-35-113(13); however, again, this court is not required to consider it as a mitigating factor. *State v. Williams*, 920 S.W.2d 247, 261 (Tenn. Crim. App. 1995), *perm. to appeal denied,* (Tenn. 1996). Good citizenship is expected of every citizen of this country, and, accordingly, it is not error for a sentencing court to reject application of this circumstance to reduce a defendant's sentence. Thus, the trial court did not abuse its discretion in this regard.

We are constrained to note that the trial court did not apply as an enhancing factor Tennessee Code annotated section 40-35-114(16) (2003), that the Appellant abused a position of private trust,

because the sentencing hearing occurred during the period of uncertainty between the United States Supreme Court's decision in *Blakely*[2] in June of 2004, and the Tennessee Supreme Court's decision in *Gomez*[3] in April of 2005. The trial court voiced concerns in the application of most all enhancement factors and, as a matter of caution, chose to apply no enhancement factors other than those permissible under *Blakely*. Our *de novo* review makes it clear that enhancement factor (16), that the Appellant abused a position of private trust, should apply. The Appellant was a parent in a position of custodial care over his eleven-week-old son. Although uncertainties existed at the time of sentencing, it is clear that this enhancement factor is factually applicable to this case. *See State v. Kissinger,* 922 S.W.2d 482, 488 (Tenn. 1996); *State v. Debra Elaine Kirk*, No. E2004-01263-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Sept. 30, 2005); *State v. Patricia Marie Jenson*, No. M2003-02848-CCA-R3-CD (Tenn. Crim. App. at Nashville, June 21, 2005). Based upon our findings and review of the record, we conclude that the presumptive minimum sentence of twenty years is clearly justified in this case.

The Appellant also argues that he should have been sentenced as an especially mitigated offender. A trial judge may find a defendant to be an especially mitigated offender if the defendant has no prior felony convictions and if the court finds mitigating but no enhancement factors. T.C.A. § 40-35-109. This provision is not mandatory but, rather, is discretionary. *State v. Braden*, 867 S.W.2d 750, 762 (Tenn. Crim. App. 1993); T.C.A. § 40-35-109, Sentencing Commission Comments. Whether a defendant is to be sentenced as an especially mitigated offender is a determination that rests within the sound discretion of the trial court. *State v. Hicks*, 868 S.W.2d 729, 739-31 (Tenn. Crim. App. 1993). It has been noted that finding a defendant to be an especially mitigated offender is reserved for "instances where the trial judge may desire to depart from even the minimum sentence for a Range I offender and impose lesser penalties." T.C.A. § 40-35-109, Sentencing Commission Comments. In the present case, the trial court found that no mitigating factors were applicable. Our analysis, *supra*, is consistent with this finding. As such, the Appellant is not eligible for sentencing as an especially mitigated offender.

## CONCLUSION

Based upon the foregoing, we affirm the sentencing decision of the Montgomery County Circuit Court.

_____
DAVID G. HAYES, JUDGE

---

[2]*Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004).

[3] *State v. Gomez*, 163 S.W.3d 632, 661 (Tenn. 2005).