# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 18, 2010

## STATE OF TENNESSEE v. WILSON PALACIO

**Appeal from the Circuit Court for Bedford County**
**No. 16756      Robert Crigler, Judge**

---

**No. M2009-02445-CCA-R3-CD - Filed September 23, 2010**

---

The Defendant, Wilson Palacio, challenges the sentencing decision of the Bedford County Circuit Court.  Following his guilty pleas to one count of aggravated burglary and three counts of aggravated robbery, the trial court imposed an effective twenty-five-year sentence to be served in the Department of Correction.  On appeal, the Defendant asserts that his sentence is excessive and that the trial court erred in ordering consecutive sentences.  After a review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Wilson Palacio.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Charles Crawford, District Attorney General; and Michael D. Randles, Assistant District Attorney General,  for the appellee, State of Tennessee.

## OPINION

### Factual Background

A Bedford County grand jury returned a four-count indictment against the Defendant on March 16, 2009, charging him with one count of aggravated burglary and three counts of aggravated robbery. See Tenn. Code Ann. §§ 39-13-402, -14-403. On September 21, 2009, the Defendant entered an "open" plea to the indictment.  The underlying facts, as recited at the guilty plea hearing, are as follows:

[O]n January 20th of this year the [D]efendant and Jose Gomez entered a residence at 409 River View Drive without the owner's of the property's effective consent. That was the Castillo family.

The [D]efendant possessed a small handgun which he displayed in the presence of the three Castillo children.

Gomez went through the home looking for items of property to steal. The [D]efendant held three children in the living room at gunpoint.

He then had each of them remove items of gold jewelry directly from their person and hand those items to him.

The [D]efendant and Mr. Gomez then left. Mr. Gomez pawned the gold jewelry at a pawn shop in Nashville. The [D]efendant was present when that was done. He received a small portion of the money.

He was arrested and interviewed by the police. He admitted that he was present and that he had the handgun and he claimed that he didn't point it at the children although the children would certainly testify that he did.

But he admits to showing them the handgun and taking their jewelry.

Subsequent to the acceptance of the Defendant's guilty plea, the trial court conducted a sentencing hearing on October 26, 2009. The State introduced the presentence report into evidence. The report showed that, at the time of sentencing, the Defendant was twenty-three years old, had never married, and had two children living in Honduras. The Defendant's girlfriend accompanied him to the United States but, after his arrest, she returned to Honduras. The Defendant stated that, since his arrival to this country in January 2007, he had worked as a sheetrock laborer for various contractors, earning approximately $500 per week. The Defendant was unable to name a specific employer but stated that he worked "through a woman from Peru for a man named Juan." The presentence report also reflected a September 20, 2008 conviction for "Driver's License Law" in Smyrna City Court; the Defendant was ordered to pay a fine and costs. According to the report, there was an outstanding capias in that case due to the Defendant's failure to pay the court-ordered fine and costs.

No testimony was presented by either party. The Defendant's counsel argued that the Defendant's sentence should be mitigated because he entered an open plea of guilty, thus

saving the State the time and expense of a trial. The Defendant made an allocution statement apologizing for his behavior.

After hearing the evidence presented, the trial court imposed a sentence of five years for the aggravated burglary conviction and ten years for each aggravated robbery conviction. Two of the aggravated robbery sentences were to be served consecutively to one another and consecutively to the sentence for aggravated burglary, for a total effective sentence of twenty-five years as a Range I, standard offender.[1] The Defendant filed the instant timely appeal.

**Analysis**

The Defendant contends that the trial court erred in setting the length of his individual sentences and in ordering him to serve consecutive sentences. On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

---

[1] The last count of aggravated robbery (Count IV) was to be served concurrently with the aggravated robbery sentence in Count III.

**I. Length**

The Defendant's conduct occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. As further explained by our supreme court in Carter,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," [Tenn. Code Ann.] § 40-35-103(5).

Id. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. Id. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. Id. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. Id. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Id. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See id. at 343; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. Carter, 254 S.W.3d at 345.

The Defendant was convicted of one count of aggravated burglary, a Class C felony, and three counts of aggravated robbery, a Class B felony. See Tenn. Code Ann. §§ 39-13-402, -14-403. As a Range I, standard offender, the Defendant's sentencing range was three

to six years for the Class C felony and eight to twelve years for the Class B felonies. See Tenn. Code Ann. § 40-35-112(a)(2), (3). The trial court imposed enhanced sentences of five years for the aggravated burglary conviction and ten years for each aggravated robbery conviction.

In setting the length of each of the Defendant's sentences, the trial court found four enhancement factors to be applicable. First, the trial judge found that the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish his range, noting that the Defendant had a Class C misdemeanor conviction for violating the driver's license law. See Tenn. Code Ann. § 40-35-114(1). The trial court also determined that the Defendant was a leader in the commission of the offense involving two or more criminal actors: "[H]e had the gun; brought the gun; brandished the [gun] and was the one that held the three victims at gunpoint." See Tenn. Code Ann. § 40-35-114(2). Next, the trial court found that the victims of the offense were particularly vulnerable because of age or physical or mental disability; the victims at the time of trial were approximately six, nine, and twelve years of age and "were very small children in statue [sic] and were particularly vulnerable." See Tenn. Code Ann. § 40-35-114(4). Finally, the trial court noted the outstanding capias against the Defendant for failure to pay the fine and costs associated with the driver's license law conviction and, thus, concluded that he had failed to comply with the conditions of a sentence involving release into the community. See Tenn. Code Ann. § 40-35-114(8). The trial court declined to apply as a mitigating factor that the Defendant pleaded guilty to the crimes, thereby obviating the need for and expense of a trial. See Tenn. Code Ann. § 40-35-113(13).

On appeal, the Defendant argues that the trial court erred in applying enhancement factors (1) and (8).[2] We need not decide whether the trial court incorrectly applied these enhancement factors because the remaining enhancement factors the trial court found are sufficient to support the Defendant's sentences. The trial court was justified in finding factor (2)—that the Defendant was a leader in the commission of the offense based upon the evidence presented. Our cases have established that enhancement for being a leader in the commission of an offense does not require that the defendant be the sole leader but only that he be "a" leader. See State v. Hicks, 868 S.W.2d 729, 731 (Tenn. Crim. App. 1993). The evidence here supports such a conclusion: The Defendant held the children at gunpoint while Gomez searched the residence. The trial court also properly enhanced the Defendant's sentence based upon a finding that the victims were particularly vulnerable, factor (4). The

---

[2] On appeal, the Defendant argues that the trial court erred in applying factors (1) and (8) because the State did not prove that his driver's license law conviction in Smyrna City Court "was not a civil matter." However, the Defendant did not raise this issue in the trial court, and issues raised for the first time on appeal are considered waived.

Tennessee Supreme Court has held that the particular vulnerability of a victim to a crime is an applicable enhancement factor, "if the circumstances show that the victim, because of his age or physical or mental condition, was in fact 'particularly vulnerable,' i.e., incapable of resisting, summoning help, or testifying against the perpetrator." State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). The three children in this case fall into each of these enumerated categories of vulnerability. Gomez had knowledge of the Castillo family; the two men entered the home when the children were home alone due to weather conditions, and they robbed them at gunpoint.

The trial court placed only "slight weight" on factors (1) and (8) and "great weight" on factor (4). Moreover, the Defendant's failure to pay the court-ordered fine and costs, even though we question whether this is a sentence involving release into the community, does speak to the Defendant's potential, or lack of potential, for rehabilitation. Even if the trial judge did err by placing "slight weight" on factors (1) and (8), the Defendant's status as a leader in the commission of the offense and the fact that the victims were particularly vulnerable are sufficient to support the enhanced sentences.

The Defendant also contends that he should have received some mitigation of his sentence based upon his open pleas of guilt. The only applicable factor was the "catch-all" provision, factor (13). See Tenn. Code Ann. § 40-35-113(13). The trial court did consider the Defendant's proposed mitigating factor, but declined to utilize the "catch-all" factor because the State objected to its application; the State arguing that the converse is not true—a trial court cannot enhance a defendant's sentence because he or she chose to proceed to trial. Because mitigating factors are not binding upon the trial court, and the court acted within its discretion is refusing to apply the catch-all mitigating factor to reduce the Defendant's sentences, we conclude that the trial court did not err or abuse its discretion in setting the Defendant's sentences at five and ten years, respectively.

## II. Consecutive Sentencing

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

> (2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b). These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing.

In State v. Wilkerson, our supreme court imposed two additional requirements for consecutive sentencing when the "dangerous offender" category is used: The court must find consecutive sentences are reasonably related to the severity of the offenses committed and are necessary to protect the public from further criminal conduct. 905 S.W.2d 933, 937-38 (Tenn. 1995). Although such specific factual findings are unnecessary for the other categories enumerated in Tennessee Code Annotated section 40-35-115(b), the imposition of consecutive sentencing is also subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed," that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed," and that the defendant's "potential for rehabilitation" be considered. Tenn. Code Ann. § 40-35-103(2), (4), (5).

The trial court imposed consecutive sentences on the Defendant based on its finding that he is "a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn.

Code Ann. § 40-35-115(b)(4). In doing so, the trial court determined that the circumstances surrounding the offense were aggravated due "to the vulnerability of the victims due to their age and small statue and their helplessness because of that." The trial court further concluded that consecutive sentencing was reasonably related to the severity of the offenses and was necessary to protect the public. There were aggravating circumstances not generally present in the typical armed robbery; the Defendant's victims were three young children who were home alone. The Defendant ordered the children at gunpoint to remove their jewelry. His co-defendant Gomez had knowledge of the Castillo family, being a co-worker with the victims' mother. We conclude that the record in this case sufficiently supports these findings. Accordingly, we affirm the trial court's imposition of consecutive sentences.

**Conclusion**

We conclude that the trial court did not err or abuse its discretion in setting the length of the Defendant's sentences. We further conclude that the trial court did not abuse its discretion by ordering consecutive sentences. The judgments of the Bedford County Circuit Court are affirmed.

_____
DAVID H. WELLES, JUDGE